OPINION
Defendant-appellant Chevas M. Horne appeals from his conviction and sentence for Involuntary Manslaughter. He contends that his conviction is against the manifest weight of the evidence, because he proved by a preponderance of the evidence the affirmative defense of self-defense.
We conclude that a the jury could reasonably find that Horne failed to prove, by a preponderance of the evidence, the affirmative defense of self-defense, because there was testimony that, if believed, would permit a reasonable finder of fact to find, by a preponderance of the evidence, that Horne was at fault in creating the situation giving rise to the altercation, that Horne did not have a bona fide belief that he was in imminent danger of great bodily harm or death, or that Horne failed to exercise a reasonable opportunity to retreat. Therefore, the verdict is not against the manifest weight of the evidence, and the judgment of the trial court is Affirmed.
 I
On February 1, 2000, following an altercation, Horne shot and killed his stepbrother, Ronald Watson. On that date, Ronald Watson went to Horne's apartment at 1106 Wildwood Avenue looking for his government check. When he could not find the check, he and Horne began to fight. Horne called 911 to report the fight, at which point Ronald left the apartment. Ronald returned to the apartment later that day. As Ronald approached the porch of the apartment, where Horne was standing, Horne pulled out a gun and shot Ronald, fatally wounding him.
Horne was arrested and charged with Murder, with a firearm specification and with having a weapon under disability. At trial, Horne claimed that he killed Ronald in self-defense. He testified that he had called Ronald to tell him that his check had arrived. When Ronald came to get the check, he could not find it. Horne and Ronald began to fight. Horne claimed that Ronald swung a hammer at him, grazing his face and hitting his hand. Horne called 911, at which point Ronald left.
Horne testified that when Ronald later returned to the apartment, Horne saw him pull a knife out of his sleeve as he approached Horne. Horne testified that he shot Ronald because he was afraid that Ronald would stab him. He testified that after he shot Ronald, he kicked the knife away from the body.
The State presented the testimony of three eyewitnesses: Chiquita Brown, Toronez Watson and Charles Starks.
Brown testified that on February 1, 2000, she went to visit her ex-boyfriend, Toronez Watson at an apartment located at 1106 Wildwood Avenue. Horne was not at home when Brown arrived at the apartment; however, Ronald Watson and Charles Starks were there. Brown and Starks left the apartment to go to the store. Brown testified that when they returned from the store about ten minutes later, she saw Horne and Ronald Watson coming out of the apartment door swinging at each other.
The altercation broke up and Ronald Watson and Starks left. Brown and Horne went back into the apartment where Horne told her that Watson had tried to hit him with a hammer, but that he missed and hit the thermostat instead. Brown testified that Horne had a little red mark on his face which he claimed was from the fist fight with Watson. Brown also testified that Horne said, "I wish I had a gun because I'd shoot his ass," and "I'll kill that nigger." At some point, Horne left the apartment.
Brown testified that while Horne was gone, the police pulled up in front of the house. Brown testified that Horne had left a gun on the kitchen counter, which she hid. She testified that she then went out to talk to the police. After the police left, Brown re-entered the apartment. Horne came back in and asked where the gun was, and he then retrieved it from the hiding spot. He said that he wished he "had a bullet to fit this gun," and walked into the bedroom. When Horne came back out of the bedroom, he had a bullet, which he loaded in the gun.
Brown further testified that later, Toronez, Watson and Starks returned. While Starks and Watson waited outside, Toronez came into the apartment and retrieved the hammer, which belonged to Watson. Brown testified that Horne then followed Toronez out onto the porch, and began telling Watson that "he was wrong." Brown testified that Watson informed Horne that he had come to apologize but decided not to, since Horne was still arguing. She testified that they continued to argue, and that Horne said "I promise to God if you try to jump on me, I'm going to kill your ass, I'm going to fuck you up." Watson then said that he would "beat Horne's ass."
Brown testified that Watson then began walking up the sidewalk to the porch. As he approached the porch, he removed his jacket and threw it to the ground. Horne went back into the apartment, and then came back out onto the porch. As Watson approached the steps to the porch, Horne pulled a gun and pointed it at Watson. Watson stopped moving, and said "You're going to shoot me?" Brown testified that she could see Watson's hands and that he held nothing in them. At that point, Watson grabbed the handrail to step up and Horne shot him. Horne then went back into the apartment.
Brown testified that as she walked up to help Watson, she noticed a knife lying on the sidewalk. She testified that Horne came back out and pulled Watson's shirt.
Charles Starks testified that Watson was his cousin, and that he was close to both Horne and Watson. He testified that he saw Horne and Watson fighting outside the apartment, and that Watson hit Horne in the face. He testified that Horne asked him if he had a gun. Starks testified that he and Watson left together to go to the post office to check on the mail. They then decided to go back to the apartment. When they arrived there, Horne was at the door with the hammer in his hand. Horne raised the hammer and told Watson not to "walk up on him." Watson stopped and took a couple of steps back. At that point, Toronez took the hammer from Horne and placed it on the trunk of a car. Starks testified that Horne then came out on the porch, and started "talking trash," and that Watson started walking toward the porch. Starks also testified that Watson threw his coat to the ground. He testified that as Watson got to the steps, Horne pulled the gun and aimed at Watson. Starks testified that Watson stopped, and said, "you're going to shoot me," at which point Horne did, in fact, shoot. Starks testified that he could see Watson's hands, which were empty. He further testified that after Watson fell to the ground, Horne approached the body and made a kicking motion with his foot. Starks finally testified that he then saw a knife where the public sidewalk and the sidewalk to the porch intersected.
Toronez Watson's testimony corroborated the testimony of Starks and Brown. He testified that Ronald Watson stopped at the first step to the porch when Horne shot him. He also testified that Ronald Watson's hands were empty.
The jury convicted Horne of Involuntary Manslaughter, with a firearm specification. The trial court found Horne guilty of Having a Weapon Under a Disability.[1] Horne was sentenced accordingly.
From his conviction and sentence, Horne appeals.
 II
Horne's sole Assignment of Error states as follows:
 THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Horne argues that the jury's rejection of his claim of self-defense is contrary to the evidence. We are not persuaded.
To reverse a jury verdict as being against the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. State v. Martin (1983), 20 Ohio App.3d 172, 175. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
To establish self-defense, a defendant bears the burden of proving, by a preponderance of the evidence, that:
 (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.
State v. Thomas (1997), 77 Ohio St.3d 323, 326, citations omitted.
Here, the evidence justified the jury's rejection of self-defense as to any of the three elements that Horne was required to prove. First, the testimony of Chiquita Brown and Charles Starks was that Horne caused the escalation of the confrontation by threatening Ronald Watson and going into the house to retrieve the firearm, thus permitting the jury to find Horne at fault in having created the situation leading to Watson's death. Second, the testimony of those same witnesses, and of Toronez Watson, was that Watson was not armed; therefore, the jury could properly have concluded that infliction of death or great bodily harm was not necessary for Horne to avoid the danger. Third, because the shooting occurred outside the residence, the jury could reasonably conclude that Horne had a duty to retreat, or more properly, not to come back out on the porch and continue the argument. In any event, we cannot say that the jury lost its way and created a manifest miscarriage of justice in rejecting Horne's claim of self-defense.
Horne makes much of the fact that a knife was found on the sidewalk, not far from the site of the fatal altercation. While this is some evidence to corroborate Horne's testimony that Watson threatened him with a knife, it is hardly enough to preclude a reasonable jury from having found against Horne on that point. Even if a reasonable jury would necessarily have found that Watson had threatened Horne with a knife, the jury might still have found that it was not reasonably necessary for Horne to have shot Watson to avoid the danger, and could certainly have found that Horne was at fault in having created the situation leading to the shooting, that Horne could have safely retreated, or both.
Horne's sole Assignment of Error is overruled.
 III
Horne's sole Assignment of Error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and YOUNG, J. J., concur.
[1] Horne waived his right to a jury trial on the weapons under a disability count, and instead, permitted that charge to be determined by the trial court.